IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IWILDA HARRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-3698 |
| | § | |
| FIRST FRANKLIN FINANCIAL | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Iwilda Harris, proceeding *pro se*, brings this lawsuit alleging that Defendant First Franklin Financial Corporation ("First Franklin") committed fraud and violated the Truth in Lending Act in connection with her home mortgage loan. Defendant has filed a Motion to Dismiss [Doc. # 26] ("Motion"), and Plaintiff has filed a Response [Doc. # 28]. The Motion is now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted**.

### I.   BACKGROUND

On November 20, 2006, Plaintiff Iwilda Harris closed on her purchase of a home at 12626 Cooper Breaks Drive in Humble, Texas. Plaintiff purchased the home

as her principal place of residence for her retirement. Her mortgage loan was financed by Defendant First Franklin. Plaintiff alleges that First Franklin misled her as to the interest rate and payment schedule on the loan.

When preparing to purchase her home, Plaintiff worked with Southwest Funding LP. Southwest Funding is not a party to this action. A Truth-in-Lending Disclosure Statement prepared by Southwest Funding on October 16, 2006, and signed by Harris on October 23, 2006, disclosed an annual percentage rate ("APR") of 6.625% and a variable rate feature.[1] The disclosure also provided a payment schedule of $1,046.26 per month for 359 months, with a final payment of $141,373.96 due on December 1, 2036. The "total" of all of Harris' payments was listed to be $516,981.30. At the top of the statement, under its heading, a statement appears: "This is neither a contract nor a commitment to lend."[2]

Plaintiff also completed a Uniform Residential Loan Application with Southwest Funding.[3] The application states on its first page that Harris was applying for a fixed rate loan with an interest rate of 6.5%. The document is signed on October 23, 2006, by the interviewer for Southwest Funding, and on November 20, 2006, by

---

[1] Truth-in-Lending Disclosure Statement signed on Oct. 23, 2006 (Exhibit C to Plaintiff's Amended Complaint & Jury Demand [Doc. # 25] ("Complaint")).

[2] *Id*.

[3] Uniform Residential Loan Application (Exhibit B to Complaint).

Plaintiff.

Plaintiff closed on the property on November 20, 2006. On that date, she signed an "Adjustable Rate Note" ("Note"), a copy of which is attached to her Complaint.[4] The title "Adjustable Rate Note" is in bold, large letters at the top of the first page. The Note states in Section 2, also on the first page, that the interest rate on the loan is 6.5% and that the rate "may change in accordance with Section 4 of this Note." In Section 3, the Note states that the monthly payments will begin on January 1, 2007 and end on December 1, 2036, and that the "initial" monthly payment amount is $1,046.26. In Section 4, the Note states that Plaintiff's interest rate "may change on the first day of December 2011 and on that day every sixth month thereafter." It then gives further details about permissible increases or decreases in the interest rate. Above the line bearing Plaintiff's handwritten signature, the Note states,

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.[5]

Also on November 20, 2006, the date of closing, Plaintiff received and signed

---

[4] Adjustable Rate Note dated Nov. 20, 2006 (Exhibit E to Complaint).

[5] *Id.* at 4.

another Truth-in-Lending Disclosure Statement, this one prepared by Defendant First Franklin.[6] The statement discloses an APR of 9.1932% with a variable rate and a prepayment penalty for 36 months. The payment schedule is laid out as follows: $1,046.26 for 60 months beginning January 1, 2007; $1,467.19 for six months beginning January 1, 2012; $1,612.97 for six months beginning July 1, 2012; $1,649.54 for 287 months beginning January 1, 2013, and a final payment of $164,141.74 on December 1, 2036. The total amount to be paid, after all scheduled payments, is disclosed as $718,844.96, an increase of more than $200,000 over the total amount Plaintiff would have paid if she had received a mortgage loan under the terms specified in the first Truth-in-Lending Disclosure prepared by Southwest Funding.

Plaintiff alleges that she was unaware that the terms of her loan did not provide for a 6.5% fixed interest rate,[7] and that she signed the Adjustable Rate Note and the second Truth-in-Lending Disclosure in good faith. She alleges that she was "blindsided" because she not given notice of the change in terms and was not given

---

[6] Federal Truth-in-Lending Disclosure Statement, dated Nov. 20, 2006 (Exhibit D to Complaint).

[7] The Court notes that the only document referring to fixed rate loan is Plaintiff's loan application. *See* Exhibit B to Complaint. Although the first Truth-in-Lending statement referred to a lower APR of 6.625%, it disclosed a variable rate loan. *See* Exhibit C to Complaint.

time to review the changes. She states that she "did not even notice at closing that the Defendant had changed the terms offered to her initially with the mortgage," and that Defendant concealed its wrongdoing by keeping the initial monthly payment amount exactly the same, even though the interest rate and other terms had changed.[8]

In April 2009, Plaintiff sought a loan modification through First Franklin, and states that at that point she first became aware that the terms of her loan had changed. First Franklin denied her request for loan modification.

By the terms of the Adjustable Rate Note, Plaintiff's interest rate currently remains at 6.5%. The Note provides that the earliest date her interest rate can be adjusted is December, 2011. Plaintiff does not allege that her rate has been adjusted.[9]

Plaintiff filed suit in this Court on November 16, 2009, nearly three years after her closing date.

## II.   RULE 12(b)(6) STANDARD

Traditionally, courts hold that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim is viewed with disfavor

---

[8] Complaint, ¶¶ 11-12.

[9] Response, at 1 ("no fluctuation has taken place or [is] scheduled to take place until December 2011").

and is rarely granted.[10] The Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.[11] Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12] Legal conclusions "are not entitled to the assumption of truth,"[13] and although they "can provide the framework of a complaint, they must be supported by factual allegations."[14]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15] "When there are well-pleaded factual allegations, a court should assume their veracity

---

[10] *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[11] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted))).

[12] *Iqbal*, 120 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

[13] *Id.* at 1950.

[14] *Id.* "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

[15] *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).

and then determine whether they plausibly give rise to an entitlement to relief."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] The determination of "whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18] "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[19] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[20] It is insufficient to plead facts that are "'merely consistent with' a defendant's liability."[21]

---

[16]  *Id.* at 1950.

[17]  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

[18]  *Id.* at 1950.

[19]  *Id.* (quoting FED. R. CIV. P. 8(a)(2) (alteration added by *Iqbal*)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).

[20]  *Twombly*, 550 U.S. at 555 (internal citations omitted).

[21]  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a court ordinarily must limit itself to the contents of the pleadings and attachments thereto.[22] "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[23] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[24] These presumably are documents whose authenticity no party questions.

## III.   ANALYSIS

Plaintiff's First Amended Complaint brings claims for (1) violations of the Truth in Lending Act (TILA) and (2) common law fraud.

### A.   TILA

#### 1.   Required Disclosures

Plaintiff alleges that, during the transaction at issue, Defendant failed to make all disclosures required by the TILA, including notice of a three-day cooling off period, notice of Plaintiff's right of rescission, and a handbook on adjustable rate

---

[22] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

[23] *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

[24] *Collins*, 224 F.3d at 499.

mortgages. She claims that, because Defendant failed to make the required disclosures, Defendant is liable to her for rescission of the contract, including all finance charges and costs collected by Defendant, court costs, and costs of litigation.[25]

TILA requires a lender to make multiple disclosures to the consumer regarding loan terms, some prior to the consummation of the transaction.[26] A creditor who fails to comply with the disclosure requirements is liable to the plaintiff for "any actual damage sustained by such person as a result of the failure."[27] A plaintiff must bring an action for damages within one year from the date of the occurrence of the violation.[28]

In this case, Defendant's alleged failure to make disclosures could have occurred no later than November 20, 2006, the date that the transaction closed. Because Plaintiff failed to bring this action within one year of that date, her TILA claim is time-barred.

To the extent Plaintiff argues that she could not have brought her TILA claim within the one year limitations period because Defendant concealed the actual terms

---

[25] Complaint, ¶¶ 17-22.

[26] 15 U.S.C. § 1638.

[27] *Id*. § 1640(a). *See Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 435 (5th Cir. 2000).

[28] 15 U.S.C. § 1640(e).

of her mortgage, her argument fails. Plaintiff's Complaint attaches documents demonstrating conclusively that, on November 20, 2006, she signed documents that disclosed the actual terms of the loan she received.[29] Plaintiff could have reviewed these documents at the time of closing or within the one year limitations period thereafter. Plaintiff's TILA claim must be dismissed as untimely.

### 2. Rescission

Plaintiff claims that, as a result of Defendant's alleged failure to make required disclosures, Defendant is liable to Plaintiff for rescission of the contract. TILA affords an obligor, or debtor, a right to rescind in certain situations.[30] When the right of rescission is exercised, the debtor must return the property at issue to the creditor, or tender its reasonable value.[31] In other words, this remedy would require Plaintiff to return the property at 12626 Cooper Breaks Drive to Defendant. Plaintiff has represented to the Court that she does not wish to do so.

At any rate, TILA expressly provides the right of rescission does not apply to

---

[29] *See* Adjustable Rate Note (Exhibit E to Complaint) (stating that the interest rate of 6.5% may change on the first day of December 2011 and every sixth month thereafter, and that Plaintiff's "initial" monthly payment was $1,046.26); Federal Truth-in-Lending Disclosure Statement, dated Nov. 20, 2006 (Exhibit D to Complaint) (disclosing an APR of 9.1932%, a variable rate feature, and an initial payment amount of $1,046.26 with increased payment amounts beginning on Jan. 1, 2012).

[30] 15 U.S.C. § 1635(a).

[31] *Id*. § 1635(b).

residential mortgage transactions.[32] Plaintiff's mortgage note clearly is covered by the exemption, which applies to "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."[33]

Plaintiff's claim for rescission is dismissed.

### B.   Fraud

Plaintiff alleges that Defendant conducted a "bait and switch" at her closing, changing the terms of her mortgage but keeping the terms "hidden in the closing documents with numerous other pages" and "[leaving] the initial payments the same in a way to disguise the changes in the terms."  She alleges that Defendant made material, false representations to her as to the loan she would receive.[34]

Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that

---

[32]   *Id*. § 1635(e)(1) ("This section does not apply to a residential mortgage transaction as defined in section 1602(w) of this title).

[33]   *Id*. § 1602(w).

[34]   Complaint, ¶¶ 23-29.

the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[35]

Plaintiff points to the first Truth-in-Lending disclosure, prepared by Southwest Funding on October 16, 2006, and signed by Harris on October 23, 2006. This disclosure pertained to a loan with an APR of 6.625% and a variable rate.[36] Plaintiff states that this document "led to closing" and that its terms "were the terms agreed to in order to close the mortgage."[37] As evidence that Defendant committed fraud, she points to the second Truth-in-Lending disclosure prepared by First Franklin on November 20, 2006, which she also signed, disclosing an APR of 9.1932% and a variable rate. She alleges that she "was promised one type of mortgage terms which led her to the Title Company to close the mortgage and was presented with another set of undisclosed terms."[38] She points out that the monthly payment amount of $1,046.26 was exactly the same under both disclosure statements, which "led Plaintiff to believe she was getting what was promised." She states that the disparity between

---

[35] *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

[36] Truth-in-Lending Disclosure Statement (Exhibit C to Complaint).

[37] Response, at 5.

[38] *Id.*

the two disclosures was deceptive.[39]

Plaintiff's pleadings, which include the documents attached to her complaint,[40] do not state a claim for fraud for several reasons.  First, fraud requires a false representation by or on behalf of the party sought to be held accountable, here, First Franklin.  Plaintiff alleges that she was induced to close on the mortgage loan by the first Truth-in-Lending disclosure.  This document reflected an APR of 6.625% and a variable interest rate.[41]  However, this same document clearly states at the top, directly under the heading, "This is neither a contract nor a commitment to lend."[42]  The Truth-in-Lending disclosure was merely an explanation of certain proposed loan terms requested by Plaintiff.  By its explicit language, the disclosure document was not a representation by First Franklin, or any lender, that Plaintiff would actually receive a loan with those terms.  Further, significantly, the disclosure document on which Plaintiff relies proposes a *variable* rate loan, flatly contradicting Plaintiff's argument that she was promised a fixed rate loan.[43]  Plaintiff therefore has not sufficiently

---

[39]   *Id*.

[40]   *Collins*, 224 F.3d at 498.

[41]   Exhibit C to Complaint.  This document was prepared by Southwest Funding, not by First Franklin.

[42]   *Id*.

[43]   Although Plaintiff cites her Uniform Residential Loan Application (Exhibit B to
(continued...)

alleged—and cannot allege consistent with the documents on which she relies—that Defendant represented that it would make her a loan according to the terms of the first Truth-in-Lending statement.[44] She fails to "'state a claim to relief that is plausible on its face.'"[45]

Second, fraud requires a showing that Plaintiff actually and justifiably relied on the alleged misrepresentation.[46] "[A] person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted."[47] First, the first Truth-in-Lending statement was not a contract and it plainly so stated. Plaintiff was not reasonable in relying on that document as the definitive summary of the final loan. Also, in this case, there were "red flags" indicating that Plaintiff's actual loan terms were different from those she claims she was promised—most notably, her second Truth-in-Lending statement and her Adjustable Rate Note. The second Truth-in-Lending statement clearly stated that the APR on the loan from

---

[43] (...continued)
Complaint) as evidence that she expected a 6.5% fixed interest rate, this document is merely an *application* for a loan. No other document attached to her complaint references a fixed rate loan.

[44] Exhibit C to Complaint.

[45] *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

[46] *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

[47] *Id*. (internal quotation marks and citations omitted).

Defendant First Franklin would be 9.1932%, that the loan had a variable rate, that the total of all payments would be $718,844.98, and that her payment amount would increase on specified dates.[48] The Adjustable Rate Note, which states "ADJUSTABLE RATE NOTE" in large, bold font at the top of the first page, states on the first page that the interest rate is 6.5% and that "[t]he interest rate I will pay may change in accordance with Section 4 of this Note."[49] Section 4, on the document's second page, states "[t]he interest rate I will pay may change on the first day of December 2011, and on that day every sixth month thereafter."[50] It also provides that the interest rate will never be greater that 12.5% nor less than 6.5%.[51] Plaintiff signed both of these documents on November 20, 2006. To the extent Plaintiff relies on the position, stated to the Court at conference, that she did not read the documents she signed at closing and therefore was unaware of the actual loan terms, her argument fails to demonstrate justifiable reliance. A party to an arms' length transaction is charged with reading what he or she signs, in keeping with the

---

[48]  Exhibit D to Complaint (laying out payment schedule showing clearly that Plaintiff's initial payment was $1,046.26 beginning on January 1, 2007, and that the payment amount would increase on January 1, 2012, again on July 1, 2012, again on January 1, 2013, and that Plaintiff would owe a final payment on December 1, 2036).

[49]  Exhibit E to Complaint, at 1.

[50]  *Id.* at 2.

[51]  *Id.*

duty to exercise reasonable diligence in one's own affairs. "[A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party."[52]

Finally, a fraud claim requires a showing of injury to the Plaintiff. In this case, Plaintiff to date has suffered no damages because, as Plaintiff agrees, the interest rate on her loan has not adjusted from her initial rate of 6.5%, and by the terms of her Note, the rate cannot be adjusted for more than another year—until December 2011 at the earliest. She therefore has suffered no financial injury.[53]

Because Plaintiff has not stated a plausible claim for relief, her fraud claim is dismissed.

---

[52] *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1963) (internal quotation marks and citation omitted). *See Taft v. Sherman*, 301 S.W.3d 452, 457 (Tex. App.–Amarillo 2009); *Coastal Bank ssb v. Chase Bank of Texas, N.A.*, 135 S.W.3d 840, 843 (Tex. App.–Houston (1st Dist.) 2004).

[53] As Defendant notes, it is debatable that a justiciable case or controversy exists at this point because Plaintiff's interest rate remains at 6.5%, the rate at which she claims she thought the loan was fixed. *See Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) ("A case or controversy must be ripe for decision, meaning that it must not be premature or speculative"). Significantly, as Defendant further states, "[a]t any time before December 2011, Plaintiff could refinance her loan; she could otherwise pay off the loan; or she could sell the house. In other words, the loan may never adjust." Motion, at 4. Plaintiff rejects the suggestion. Response, at 2. As noted, Plaintiff has represented to the Court that she wishes to remain in the house. It is unclear why Plaintiff rejects the refinancing suggestion, as she has no viable legal claims against Defendant. Refinancing the loan with some lender, even if not with Defendant First Franklin, may allow Plaintiff to remain in the home with loan terms more desirable to her.

## IV.     CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss [Doc. # 26] is **GRANTED**. All pending claims are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that Defendant's Unopposed Motion to Extend Mediation Deadline [Doc. # 33] is **DENIED as moot**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **20th** day of **October, 2010**.

_____
Nancy F. Atlas
United States District Judge